## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK DOTTORE, COURT-APPOINTED RECEIVER FOR THE RECEIVERSHIP ENTITIES<br>3344 Canal Road<br>Cleveland, OH 44113, | ) ) ) ) ) ) | CASE NO.<br><br>JUDGE |
| Plaintiff, | ) ) | **VERIFIED COMPLAINT** |
| v. | ) ) ) | **(Jury Demand Endorsed Hereon)** |
| STUDIO ENTERPRISE MANAGER, LLC<br>c/o Corporation Service Company<br>Statutory Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808 | ) ) ) ) ) ) ) | |
| and | ) ) | |
| EDUACATION PRINCIPLE FOUNDATION<br>c/o Corporation Service Company<br>Statutory Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808 | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Mark Dottore, Receiver for the Receivership Entities ("Plaintiff" and/or the "Receiver"), by and through undersigned counsel, for its Complaint against Defendants Studio Enterprise Manager, LLC ("Studio") and Education Principle Foundation ("Foundation") (Studio together with Foundation are collectively known as the "Defendants") states as follows:

## Introduction

1.      Plaintiff is the Court-Appointed Receiver for the Receivership Entities pursuant to an Order by this Court dated January 18, 2019 in *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 1:19-cv-145 (N.D. Ohio).  The Receivership Entities are parties to various transactions with the Defendants both individually and through their respective parent entities, The Arts Institute International, LLC, Dream Center South University, LLC and Dream Center Argosy University of California, LLC and Argosy Education Group, LLC.

2.      Plaintiff brings this action for rescission, declaratory judgment, conversion, breach of contract and unjust enrichment.

## PARTIES

3.      The Receiver is a citizen of the State of Ohio and is the Receiver for Dream Center Education Holdings, LLC ("DCEH") and its subsidiaries, including: South University of Ohio LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee- Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumburg LLC, DC Art Institute of Phoenix, LLC and its direct subsidiaries the Art Institute of Las Vegas LLC, the Art Institute of Indianapolis, LLC, and AiIN Restaurant  LLC; Dream Center Argosy University of California LLC and its direct subsidiaries, and Argosy Education Group LLC; Dream Center Education Management

{01286538-1}

LLC; and, South University of Michigan LLC (collectively, the "Receivership Entities"). By order of the United States District Court for the Northern District of Ohio entered January 18, 2019 in the matter *Digital Media Solutions, LLC v. South University of Ohio, LLC, et al.*, No. 1:19-cv-145, the Receiver is empowered to bring this action.

4.     Studio is a Delaware limited liability company with its principal place of business in the State of California.

5.     Foundation is a Delaware not for profit corporation with its principal place of business in the state of California.

## JURISDICTION AND VENUE

6.     This Court has ancillary jurisdiction over this matter pursuant to *Pope v. Louisville & C. Ry. Co.*, 173 U.S. 573 (1899), and *Haile v. Henderson Nat. Bank*, 657 F.2d 816 (6th Cir. 1981). In *Haile*, the Sixth Circuit explained that "the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction." *Haile*, 657 F.2d at 822.

7.     This action is brought pursuant to this Court's Order Appointing Receiver, entered January 18, 2019, in the matter *Digital Media Solutions, LLC v. South University of Ohio, LLC, et al.*, a case in which this Court has original jurisdiction.  The order empowers the Receiver to bring this action to rescind the various transactions entered by DCEH with Defendants.

8.     This Court has personal jurisdiction over the Defendants by virtue of 28 U.S.C. § 1332, 28 U.S.C. § 754 and 28 U.S.C. § 1692.

3

{01286538-1}

    a.   28 U.S.C. § 754 provides that

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

    b.   28 U.S.C. § 1692 provides that

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

9.    The Receiver timely filed § 754 notices in the judicial districts where the Defendants are located; *i.e.*, the Northern District of California, the Eastern District of California, the Central District of California, the Southern District of California, and the District of Delaware. *See Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 3:19-mc-80016 (N.D. Cal. Jan. 24, 2019); *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 2:19-mc-16 (E.D. Cal. Jan. 25, 2019); *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 2:19-mc-12 (C.D. Cal. Jan. 25, 2019); *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 3:19-mc-96 (S.D. Cal. Jan. 24, 2019); *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 1:19-mc-20 (D. Del. Jan. 25, 2019). In

{01286538-1}

addition, the Receiver timely filed § 754 notices in every judicial district in the United States—with the exception of the territorial courts for the Northern Mariana Islands, Guam, and the Virgin Islands. *See* Exhibit A (Excel Spreadsheet of § 754 notices).

10. In *Haile*, the Sixth Circuit explained that by virtue of §§ 754 and 1692 "the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754." *Haile*, 657 F.2d at 823. Thus, the appointing court's "process extends to any judicial district where receivership property is found. As such, the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite." *Id.* at 826; *see also S.E.C. v. Bilzerian*, 378 F.3d 1100, 1106 (D.C. Cir. 2004) (declining to "part company" with *Haile* and concluding "that the 'interplay' between Rule 4(k) and 28 U.S.C. §§ 754 and 1692 properly provided the district court with jurisdiction over the person of [the defendant]").

11. Accordingly, this Court has personal jurisdiction over the Defendants.

12. Venue is proper in this Court pursuant to the Sixth Circuit's decision in *Haile* and 28 U.S.C. § 1391(b)(3), as the Defendants are subject to personal jurisdiction in this judicial district.

## **FACTUAL BACKGROUND**

### **I.     DCEH Purchases the Universities from EDMC.**

13. Dream Center Education Holdings, LLC ("DCEH"), has owned, since October 2017, through a series of subsidiaries, a number of universities that operate under the names "South University," "Argosy University," and "Art Institutes" (collectively, the "Universities").

14.    DCEH purchased the Universities from Education Management Corporation ("EDMC") in October 2017, with a second closing in January 2018.

15.    Within sixty days of the closing of DCEH's purchase of the Universities from EDMC, DCEH discovered that EDMC and its representatives misrepresented key financial factors concerning the Universities.

16.    Despite DCEH's best efforts, the Universities were, on the whole, failing without hope for redemption.

17.    As a result of the cash flow issues, the Universities, and by extension DCEH, suffered. DCEH became delinquent in its obligations to a wide variety of vendors.

## II.    DCEH and Its Subsidiaries Enter into a Series of Contracts with Defendants and Their Subsidiaries.

18.    In mid to late December 2018 and early January, 2019, DCEH executed a series of contracts with Studio, Dream Center Education Management ("DCEM") and The Arts Institute International, LLC("AII" and collectively with all its Subsidiaries, the "Ai University System"), Dream Center South University, LLC ("South" and collectively with all its Subsidiaries, the "South University System"), and Argosy Education Group, LLC ("AEG"), Dream Center Argosy University of California, LLC ("Argosy" and collectively with all its Subsidiaries, the "Argosy University System"). These contracts include:

a.  a Framework Agreement;

b.  an Interim Framework Agreement;

c.  an Amended and Restated Framework Agreement;

6

d. an Equity and Asset Purchase Agreement

e. a Master Services Agreement; and

f. a Transition License Service Agreement.

19.     Although these contracts are lengthy and complex, at their core, they are simple enough: they allowed Studio to strip DCEH of all its valuable business assets pertaining to the Art Institute University System and the South University System. These contracts left DCEH all of the debts and liabilities for the Excluded Campuses[1] plus the equity and assets to AEG and Argosy University System.  DCEH was therefore left with schools that were in the process of closing thanks to their poor financial performance inherited from EDMC.

### A.    The Framework Agreement and its Related Contracts.

20.     On or about December 22, 2018, Studio, DCEH, DCEM and certain members of the AI University System entered into a Framework Agreement (the "Original Agreement"). A copy the Original Agreement is attached hereto and marked as Exhibit "B".

21.     On or about December 26, 2018, Studio, DCEH, DCEM, South University System, Argosy University System, Ai University System, Candlewood Special Situations Master Fund I, L.P., Flagler Master Fund SPC, Ltd entered into an Interim Framework Agreement ("IFWA")[2].  A working copy of the IFWA is attached hereto and marked as Exhibit "C".

22.     On or about January 7, 2019, Studio, DCEH, South University System, Argosy University System, Ai University System and each subsidiary university of South,

---

[1] Capitalized terms shall have the meaning set forth in the ARFWA, EAPA, MSA or TSLA unless otherwise defined herein

[2] Receiver has only been provided a working version of the IFWA and has never been provided the final version or a fully executed copy of the IFWA even though the Receiver has requested a copy.

7

Argosy and AII entered into an Amended and Restated Framework Agreement ("ARFWA"). DCEH, South, Argosy, AEG, AII and together with all the subsidiary universities are collectively known as the "Dream Parties." A copy of the ARFWA is attached hereto and marked as Exhibit "D"[3].

23. The ARFWA removed DCEM as a party and added the subsidiary universities of Argosy, South and AII as parties.

24. The ARWFA created the framework for Studio to enter into certain additional agreements with Dream Parties to provide certain services pursuant to and in accordance with the terms of the ARFWA and the Managed Services Agreements ("MSA").

25. Contemporaneously with the execution of the ARFWA, MSAs would be executed by Studio and each University System whereby Studio would provide Non-Core Services.

26. The ARFWA required that contemporaneously with the execution of the ARFWA (and prior to the consummation and execution of the transactions contemplated by the Equity and Asset Purchase Agreement ("EAPA")), each University System[4] shall execute and deliver to Studio a MSA.

27. Pursuant to the MSA, Studio and AII, South and Argosy agreed upon a budget for the operations of each University system that was supposed to reflect sufficient revenue to support the fees payable under the MSA for such Specified Campus, as well as appropriate funding for all required operations including the

---

3 Receiver's copy of the Disclosure Schedules to the ARFWA is incomplete. A complete of the Schedules was to be delivered to the parties per the ARFWA by January 31, 2019. The Receiver still has not received a complete list.
4 "University System" means individually South University System, Argosy University System and Ai University System and collectively means "University Systems".

{01286538-1}

ongoing delivery of academic and other Core Services which are outside the scope of the MSA.

28.    There were three MSAs.

    a.   One was between Studio and the Argosy University System.

    b.  Another was between Studio and AII.  This contract provided that the Services would be provided only for the Specified Campuses.  The Art Institute entities now in the Receivership Estate were defined to be "Excluded Campuses," not "Specified Campuses," and therefore were not covered by that MSA.

    c.  The third MSA was between Studio and Dream Center South University LLC.  No reference was made to the subsidiary universities, and the signator did not sign in a representative capacity for the subsidiaries, each of which was an independent LLC.  Accordingly, the South University entities now in the Receivership Estate were not covered by that MSA.

29.    The ARFWA further gave Studio the discretion to purchase or have its Subsidiaries purchase from the Dream Parties certain Non-Core Assets required to provide the service outlined in the managed services agreement with respect to the University System.

30.    The ARFWA further gave Studio the discretion to choose which real property leases to assume and then cause such Subsidiary to sublease the Assumed Lease Obligations for those leases.

31.    Pursuant to the ARFWA, Studio and DCEH were required to enter into a Transition Services and License Agreement ("TSLA").

32.     Further, Studio was given the right to acquire the Core Assets and Core Assumed Liabilities of any Specified Campus for which Studio or its Affiliates have acquired the Non-Core Assets.

33.     Per the ARFWA, Studio was given the right to cause DCEH to assign and transfer 100% of the issued and outstanding equity interest in AII, Argosy and South.

34.     As such, contemporaneously with the execution and delivery of the ARFWA, Studio's designee, Defendant Education Principle Foundation ("Foundation") was to enter into an Equity and Asset Purchase Agreement ("EAPA") to purchase the Equity Interest of each of AII and South owned by DCEH.

35.     The ARFWA further required that any Excluded Campus to cease using any marks related to the Specified Campuses within one year from the date of the ARFWA.

36.     The ARFWA further required that DCEH remove or cause the removal of all directors, trustees, managers and officers of all Boards and Boards Committees and all other position at South, Argosy, AII and their respective Subsidiaries.  It gave the Foundation the right to designate the replacement directors, trustees, managers and officers of South, Argosy and AII.

37.     The ARFWA required that except for The Art Institute of California-San Diego and the Art institute of Seattle, DCEH was obligated to Teach-Out any campus identified as an Excluded Campus

38.     The ARFWA required DCEH and each member of the Argosy University System and each member of the Ai University System to grant to Studio, for its benefit, to secure payment and performance in full of the obligations and liabilities of DCEH the Argosy University System and the Ai University System, a continuing security interest

10

in, and pledges to Studio all of its respective right, title and interest in and to, the Collateral.

39.     DCEH and each member of Argosy University System and the Ai University System authorized Studio to file UCC financing statements with all appropriate jurisdictions to perfect or protect Studio and its Affiliates interests or rights hereunder in the Collateral.[5]  DCEH and the other entities complied with their obligation to so file, and copies of the UCC Financing Statements are collectively attached hereto as Exhibit "E".

40.     The ARFWA further required DCEH and each member of the AI University System and Argosy and AEG to execute and deliver a bill of sale assignment and assumption agreement pursuant to which each Ai Receivable Assignor would assign to Studio all accounts receivable that are Collateral for the consideration of One Dollar.

**B.      The Equity Asset Purchase Agreement.**

41.     On or about January 7, 2019, Foundation, South University System, Ai University System (collectively as "Purchasers") and DECEH as Seller entered into an EAPA.  A copy of the unexecuted EAPA is attached hereto as Exhibits "G".

42.     Pursuant to the EAPA, Studio designated (a) the Foundation to purchase the Equity Interests of AII and South ("Transferred Interests"), provided that prior to such purchase, the Equity Interest in the Excluded Campuses were transferred to DCEH; (b) AII to purchase the Business Assets[6] used exclusively by the Ai University

---

[5] The security interests granted by Argosy University System herein only applied to the assets of the following Arts Institute campuses which are a part of the Argosy University System: The Art Institute of California – Hollywood; The Arts Institute of California- Orange County; The Arts Institute of California – Inland Empire; The Arts Institute of California – Sacramento; and The Arts Institute of California – San Francisco.
[6] Business Assets included the assets of Seller with respect to the Specified and Excluded Campuses.

{01286538-1}

System (AII Transferred Assets"); and (c) South to purchase the Business Assets used exclusively by the South University System ("South Transferred Assets")

43.     The purchase price for the AII Transferred Assets (which included all Accounts Receivable of or related to the AI University System held by DCEH) was One Dollar ($1.00) plus the assumption of the AII Assumed Liabilities.

44.     The purchase price for the South Transferred Assets was One Dollar ($1.00) plus the assumption of the South Assumed Liabilities.

### C.     The Managed Services Agreements.

45.     On or about January 7, 2019, Studio entered into MSAs with each of AII, South, AEG, and Argosy.  The MSA for South is attached hereto as Exhibit "H".  The MSA for the Argosy University System is attached hereto as Exhibit "I".  The MSA for AII is attached hereto as Exhibit "J".

46.     The MSAs provided that Studio, subject to DCEH meeting its obligation under the TSLA, would provide the operational support services as further set forth in the Statement of Work attached to the MSA as Exhibit A.

47.     The Statement of Work required Studio to provide (i) Financing and General Services, (ii) Program Analysis, Marketing, and New Inquiry Generation, (iii) Enrollment Management Through Application, (iv) Student Life Cycle Support Services, and (v) Student Mentoring Services (post-enrollment).

48.      The schools themselves were responsible for providing the Core Services.

49.     The MSA allowed Studio to provide the services through the TSLA with DCEH or third parties.

{01286538-1}

50.    Studio was to be paid a monthly fee for the provision of services, with the payment to be made *in advance* and equal to the projected Service Fee (subject to the True-Up amount, if any), plus the TSA Fee as that term is defined in the MSA.

51.    The Projected Service Fee was to be paid by the University monthly in advance on the first day of each month of the Term in cash by wire to the account specified by Studio.

52.    The MSAs state that if the University, as that term is defined in each MSA, fails to pay its portion of the TSLA during the Initial Term (through the payment of Non-Core Expenses that correspond to the University's allocated share of the TSA fee), DCEH may not be able to continue to provide the shared services to the other Universities that also receive such shared services.

53.    The Initial Term for the MSA was for a period for fifteen (15) years.

**D.    The Transition Services and License Agreement.**

54.    On or about January 7, 2019, Studio and DCEH entered into a TSLA.  An execution version of the TSLA is attached hereto as Exhibit "K".

55.    The TSLA allowed Studio to subcontract with DCEH for it to provide certain of the Managed Services that Studio was obligated to provide to the University.

56.    The TSLA further granted Studio the right to purchase from DCEH the full right and ability to use such software and other Technology and to receive certain Managed Services.

57.    Pursuant to the TSLA, DCEH agreed to provide the Transition Service set forth on Schedule A during the Initial Term.

58.    The Transition Services include: (i) Accounting Services; (ii) Financial Information Systems Services, (iii)FP&A Services, (iv) Procurement Services, (v)

13

HR/Benefit Services, (vi) Payroll Services, (vii) Marketing Services & Communication Services, (viii) State Licensing Services, (ix) Central Student Financial Services, (x)Corporate Support, (xi)Information Technology (xii) Data Downloads, (xiii) Design, Development or Migration of IT Systems, (xiv) Service Center, and (xv) Managed Services. The Transition Services were all services Studio was obligated to provide pursuant to the MSAs.

59.   As compensation for DCEH's provision of the Transition Services, Studio was to pay DCEH the monthly fees set forth on Schedule A within ten (10) Business Days after the end of each month of the Term, even though Studio was paid in advance on the first day of the previous month.

60.   Studio, therefore, would retain the difference between the Service Fee and the Transition Services Fee.

61.   Upon information and belief, the Initial Term of the TSLA began on January 7, 2019 and continues in effect until termination of the MSA.

### III.   The Equity Asset Purchase Agreement Allowed Studio to Strip DCEH of All Its Valuable Business Assets.

62.   The theory underlying the MSA and the TSLA was that the Universities would receive monies from the United States Department of Education (the "DOE"), pay those monies over to Studio pursuant to the Service Fee, which Studio would then pay DCEH as the Transition Services Fee, retaining for itself the difference.

63.   The EAPA also allowed Studio to strip DCEH of all valuable Business Assets pertaining to the Ai University System and the South University System, while leaving with DCEH all of the debts and liabilities for the Excluded Campuses.   DCEH

was therefore left with schools that were in the process of closing thanks to their poor financial performance inherited from EDMC.

64.     Studio's consideration of One Dollar ($1.00) for the Transferred Interest for Ai and South and an additional One Dollar ($1.00) each for the Transferred Assets of the Ai University System and South University System was inadequate consideration for the Transferred Interest and Transferred Assets that Studio received.

65.     Studio has failed to abide by its obligations under the ARFWA, EAPA, MSA and TSLA.

66.     Studio has failed to pay DCEH the Transition Services Fee as set forth in the TSLA, and, therefore, making it impossible for DCEH to continue provide the Transition Services.

67.     As DCEH becomes unable to provide the Transition Services, Studio has failed to provide the Services due Ai University System, South University System and Argosy University System.

68.     Studio further failed to set up an account with Microsoft Team Foundation Services per the terms of the TSLA.

## CAUSES OF ACTION

## COUNT I:  Rescission

69.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 68 hereof as if fully re-written.

70.     Upon information and belief, Studio provided no services, funds, or other things of value in exchange for DCEH entering into the ARFWA, EAPA, and the TSLA and the Receivership Entities, through their Parent Company entering into Managed

{01286538-1}

Service Agreements (ARFWA, EAPA, MSA and TSLA are hereinafter collectively referred to as the "Contracts").

71.     The Contracts therefore fail for want of consideration.

72.     The Contracts are unconscionable on both substantive and procedural grounds.

73.     The Contracts are unconscionable on substantive grounds insofar as they: call for DCEH and the Receivership Entities to pay for services Studio will either provide, or pay to have provided; maintain an overall imbalance in the obligations and rights imposed thereunder; provide Studio with unjustified and unjustifiable liquidated damages of the amount of the Service Margin (calculated as the product of (i) the Non-Core Expenses multiplied by (ii) Margin Rate,  provided that during the Initial term the Service margin shall not be less than the Minimum Service Margin (i.e. $1,000,000.00)) for the duration of the Initial Term in the event the Receivership Entities terminate them without cause;  and pay Studio a Service Fee for doing absolutely nothing. Accordingly, the Contracts must fail since they are so extreme as to appear unconscionable according to the mores and business practices of today

74.     The Contracts are unconscionable on a procedural basis insofar as the lopsided terms resulted from the imbalance in bargaining power.

75.     Upon information and belief, the Receiver contends that DCEH and the Receivership Entities were forced into the Contracts by the United States Department of Education with the threat that the DOE would cut all funding to the schools unless the money flowed through Studio in the process set forth by the Contracts.  The Receiver further alleges under information and belief that Defendants' representatives spent considerable time and resources pitching the deal to the DOE to thereby cause DOE to

{01286538-1}

force the Contracts upon the Receivership Entities.  There was no legitimate negotiation of the Contracts.  Accordingly, the Contracts must be considered procedurally unconscionable.

76.    Equitable rescission is the only appropriate remedy insofar as the Contracts resulted in not only the Receivership Entities being required to pay Studio at a minimum $1 million per month for the remainder of the Initial Term, with Studio thereafter refusing to pay DCEH the Transition Services Fee it contracted with DCEH to pay, while Studio took a security interest in the Collateral of the entities set forth on the UCC financing statements.  Studio filed UCC financing statements to perfect those security interests.  Only an equitable rescission affected by this Court will serve to unwind the entire transaction, including the cancellation of the wrongfully-filed UCC financing statements.

77.    Accordingly, DCEH seeks equitable rescission of the Contracts to which it is a party; specifically, the Framework Agreement, The Interim Framework Agreement, The Amended & Restated Framework Agreement, The Transition Services and License Agreement, and to the extent it conveyed equity and assets of any Receivership Entities, the Equity and Asset Purchase Agreement.

78.    AEG and Argosy seek rescission of the Master Services Agreements they entered.

79.    The Receivership Entities seek rescission of the Amended & Restated Framework Agreement.

80.    Should the Court grant equitable rescission, Studio or its designee, Foundation, will continue to own the Transferred Interest in AII and South plus continue to have all right and title to the Transferred Assets of the Specified Campuses.

### COUNT II:  Rejection – Declaratory Judgment

81.     Plaintiff incorporates by reference the allegation set forth in paragraphs 1 through 80 hereof as if fully re-written.

82.     Pleading in the alternative, and in the event this Court is unwilling or unable to equitably rescind the Contracts as requested, the Receiver requests declarations of the parties' rights thereunder and his ability to Reject the Contracts.

83.     Pursuant to both common law and this Court's Order of January 18, 2019 (Order Appointing Receiver, Doc # 8), the Receiver has the right and ability to reject any contract not deemed to be in the interest of creditors of the estate.

84.     The Contracts operate to the sole and exclusive benefit of Defendants alone – not the creditors of the receivership estate on the whole.

85.     The Receiver accordingly rejects the Contracts, and Studio will suffer no compensable damages as a result.

86.     The Receiver asks for a declaration from this Court that he is entitled to reject the Contracts and have the Business Assets of the Receivership Entities returned to Plaintiff.

87.     The Receiver further asks for a declaration from this Court that Defendants are entitled to no damages as a result of his rejection of the Contracts.

### COUNT III:  Breach of Contract

88.      Plaintiff incorporates by reference the allegations set forth in paragraph 1 through 87 hereof as if fully rewritten herein.

89.     Per the TSLA, DCEH agreed to provide Transition Services and such other Managed Services as may be required for Studio to perform its obligations under the MSAs, and in exchange, Studio was to pay DCEH the Transition Service Fee within 10

{01286538-1}

Business Days after the end of each month of the Term as set forth in the TSLA, which corresponded to the Initial Term as set forth in the MSA.

90.   DCEH has provided the requisite services due under the TSLA.

91.   Studio has failed, despite due demand from Plaintiff, to pay the full Transition Service Fee.

92.   Studio has also failed to set up an account with Microsoft Team Foundation Services per the terms of the TSLA.

93.   Studio has therefore breached the Contracts, and Plaintiff expects the breaches to continue as each month's payment due DCEH comes due.

94.   As a direct and proximate result of Defendant's breach, DCEH has been damaged in an amount in excess of $75,000.00.

### COUNT IV:  Unjust Enrichment

95.   Plaintiff incorporate by reference the allegations set forth in paragraphs 1 through 95 hereof as if fully rewritten.

96.   Studio was paid the sums required under the Contracts, but has failed to provide (or pay for the provision of) the services it was required to provide thereunder.

97.   Upon information and belief, Plaintiff contends that Studio has not performed any other obligations required under the Contracts.

98.   As a result of having been paid, yet providing no service or value whatsoever, Studio has been unjustly enriched in the amount of at least $2.6 million as of February 15, 2019.  That sum will increase for each subsequent month in which DCEH provides services and Defendant fails to pay the requisite sums due.

**WHEREFORE**, Mark E. Dottore, the Court-appointed Receiver and Plaintiff in this action, respectfully demands relief as follows:

{01286538-1}

1.      Upon Count One of the Complaint, with an Order from this Court awarding equitable rescission, thereby putting the parties where they were before the Contracts were entered, voiding the Contracts *ab initio*, requiring Foundation to transfer back to DCEH the Transferred Interests and to return to Plaintiff the Business Assets formerly owned by the Receivership Entities, and to terminate all UCC Financing Statement filed by or on behalf of Studio to perfect its security interest in the Collateral of the  entities set forth on the financing statements;

2.      In the alternative, upon Count Two of the Complaint, issuing a judgment declaring the Receiver's right to reject the Contracts, return to Plaintiff the Business Assets formerly owned by the Receivership Entities, to terminate the UCC Financing Statements filed by or on behalf of Studio to perfect its security interests in the Collateral of the entities set forth on the financing statements , and further declaring that Defendant is owed nothing as a result of the rejection.

3.      Upon Count Three of the Complaint, with an Order from this Court requiring Studio to pay DCEH an amount in excess of $75,000 due under the TSLA

4.      Upon Count Four of the Complaint, with an Order from this Court requiring Studio to pay DCEH an amount in excess of $75,000 to compensate DCEH for the services it has provided pursuant to the TSLA;

6.      Judgment against Defendants awarding investigation costs incurred by the Receiver and reasonable attorneys' fees to the extent permitted by law; and

7.      For such other relief as this Court may find just and equitable.

{01286538-1}

Dated: February 21, 2019

Respectfully submitted,

/s/ Robert T. Glickman
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
McCarthy, Lebit, Crystal
   & Liffman Co., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Mark Dottore, Court-appointed Receiver for the Receivership Entities, seeks a trial by jury on all claims herein so triable.

/s/ Robert T. Glickman
Robert T. Glickman (0059579)
*One of the Attorneys for the Receiver*

{01286538-1}

## **VERIFICATION**

STATE OF ~~OHIO~~ CALIFORNIA )
               ) ss:
~~CUYAHOGA~~ ALAMEDA COUNTY )

Mark E. Dottore, being duly sworn, deposes and states and follows:

1.  I am the Court-appointed Receiver for the Receivership Entities, and I am the Plaintiff in this lawsuit.

2.  I have reviewed the Verified Complaint. The facts alleged in the Verified Complaint are true and accurate to the best of my knowledge.

_____
Mark E. Dottore

*Signed at Berkely CA.*

SWORN TO BEFORE ME, and subscribed in my presence, this 20th day of February, 2019.

_____
NOTARY PUBLIC

SUNIL VASWANI
Notary Public – California
Alameda County
Commission # 2185007
My Comm. Expires Feb 27, 2021

{01286486-1}