UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK E. DOTTORE, RECEIVER | ) | CASE NO. 1:19-cv-380 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE |
| v. | ) | |
| | ) | |
| STUDIO ENTERPRISE MANAGER, LLC *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF RECEIVER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Mark E. Dottore, as the Court-appointed Receiver for the Receivership Entities[1] (the "Receiver"), moves this Court, under Fed. R. Civ. P. 65(a) and (b), to issue a temporary restraining order and preliminary injunction requiring Defendants Studio Enterprise Manager, LLC and Education Principle Foundation to (1) pay the Receiver $2.1 million, which is due and owing, and (2) transfer to the Receiver any and all monies

---

[1] The "Receivership Entities" are South University of Ohio LLC, Dream Center Education Holdings LLC, The DC Art Institute of Raleigh-Durham LLC, The DC Art Institute of Charlotte LLC, DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, The Art Institute of Tennessee – Nashville LLC, AiTN Restaurant LLC, The Art Institute of Colorado LLC, DC Art Institute of Phoenix LLC, The Art Institute of Portland LLC, The Art Institute of Seattle LLC, The Art Institute of Pittsburgh, DC LLC, The Art Institute of Philadelphia, DC, LLC, DC Art Institute of Fort Lauderdale LLC, The Illinois Institute of Art LLC, The Art Institute of Michigan LLC, The Illinois Institute of Art at Schaumberg LLC, DC Art Institute of Phoenix, LLC and its direct subsidiaries the Art Institute of Las Vegas LLC, the Art Institute of Indianapolis, LLC, and AiIN Restaurant LLC; Dream Center Argosy University of California LLC and its direct subsidiaries, and Argosy Education Group LLC; Dream Center Education Management LLC; and, South University of Michigan LLC. *See* Order Appointing Receiver (Doc. 8) at 3-4, *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 1:19-cv-145 (N.D. Ohio Jan. 18, 2019); *see also* Order Clarifying Order Appointing Receiver (Doc. 14) at 1, *Digital Media Solutions, LLC v. South University of Ohio, LLC et al.*, Case No. 1:19-cv-145 (N.D. Ohio Jan. 25, 2019) (removing AU Student Funding, LLC as a "Receivership Entity").

received in February 2019 from or on behalf of Art Institutes International, LLC("AII") and its subsidiaries ("Ai University System"), Dream Center South University LLC ("South") and its subsidiaries ("South University System"), Dream Center Argosy University of California LLC ("Argosy") and its subsidiaries ("Argosy University System"), and Argosy Education Group LLC (AEG").

Absent this emergency injunctive relief, the Receivership Entities will be unable to meet payroll, its computer system will shut down, and the Ai University System, Argosy University System and the South University System will collapse, leaving tens of thousands of students out in the cold.

## INTRODUCTION

On January 18, 2019, Mark Dottore was appointed receiver of Dream Center Education Holdings, LLC ("DCEH") and its subsidiaries, the Argosy University system and a select few other South University and Art Institutes campuses. A few weeks earlier, at the beginning of the new year, DCEH owned three full university systems: South University, Art Institutes, and Argosy University. It had purchased those three systems from Education Management Corporation ("EDMC") in October of 2017. Shortly after it purchased the three university systems, DCEH realized that EDMC had seriously misrepresented the status of the three school systems and, in fact, it was likely those schools would fail absent a significant restructuring. Desperate to try to save the schools and protect the students, at the insistence of the Department of Education ("DOE") DCEH entered into a series of contracts with Defendant Studio Enterprise Manager, LLC ("Studio") and its related company Defendant Education Principle

2

Foundation ("Foundation") whereby all Business Assets[2] of Ai University System and South University System were transferred to AII and South. Prior to the transfer of the Business Assets, DCEH transferred the equity interest in AII and South to Foundation except that the equity interest in Excluded Campuses remained with DCEH. As a result, the only assets that remained were the equity interest in Argosy University System and AEG, assets in the Argosy University System and the liabilities and obligations of the Excluded Campuses.

In short, the only campuses remaining after the transaction were those that were failing without hope of redemption, i.e. the Excluded Campuses, Argosy University System and AEG. Those were the campuses that have been entered into receivership.

Pursuant to the Managed Services Agreements ("MSAs") which were entered into with AII, South and Argosy, Studio contractually obligated itself to provide Managed Services. Pursuant to the Statement of Work which was attached to the MSA as Exhibit A, Studio was required to provide: (i) Financing and General Services, (ii) Program Analysis, Marketing, and New Inquiry Generation, (iii) Enrollment Management Through Application, (iv) Student Life Cycle Support Services, and (v) Student Mentoring Services (post-enrollment). The MSA allowed Studio to contract with DCEH, though a Transition License Servicing Agreement ("TSLA"), to provide certain of the Managed Services which Studio was to provide. DCEH was therefore to provide the Transition Services which included: (i) Accounting Services; (ii) Financial Information Systems Services, (iii)FP&A Services, (iv) Procurement Services, (v) HR/Benefit Services, (vi) Payroll Services, (vii) Marketing Services & Communication Services, (viii)

---

[2] Capitalized terms shall have the meaning set forth the Complaint unless otherwise defined herein.

State Licensing Services, (ix) Central Student Financial Services, (x)Corporate Support, (xi)Information Technology (xii) Data Downloads, (xiii) Design, Development or Migration of IT Systems, (xiv) Service Center, and (xv) Managed Services, if Studio requested DCEH to provide. A single computer system in Pittsburgh owned by DCEH has been used to provide the Transition Services for all three university systems. The obligation for DCEH to continue to provide the Transition Services is equal to the Initial Term of the MSA, which is fifteen (15) years.

As set forth in the Complaint and the attached Declaration of Mark Dottore (attached as Exhibit A), the three university systems have paid Studio certain sums of money, believed to be in excess of $6 million; in February 2019 alone, the South University System paid Studio approximately $1.3 million and the Ai University System paid Studio, upon information and belief, approximately $1.0 million. Studio was to have paid DCEH the sum of $3.9 million for the services provided to date, but has paid only $1.8 million, leaving $2.1 million due. Further, DCEH is owed another $3.9 Million on March 14, 2019 for the Transition Service DCEH provided in February 2019. The money is desperately needed to cover all of the Transition Services that DCEH is required to provide including, but not limited to, payroll, health benefits, and operating expenses. Absent those funds, it is certain that all three university systems will close, leaving tens of thousands of students out in the cold without a way to complete their degrees at the schools, or transfer their credits to another institution that will acknowledge the credits earned at each campus thereby allowing the students to pick up their studies without interruption. Unless this Court orders Studio to pay the funds owed ($2.1 million) and the funds it wrongfully received from South ($1.3 million) and Ai ($1.0 million), the Receivership Entities will be unable to operate, the Ai University

4

System, Argosy University System and the South University System will close, and the schools' tens of thousands of students will bear the brunt of the damage.

**ARGUMENT**

A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable injury in the absence of preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions." *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008) (citing *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Here, all four factors counsel strongly in favor of emergency relief. The Court should grant a temporary restraining order and preliminary injunction in favor of the Receiver.

I.   **The Receiver Is Likely to Succeed on the Merits.**

   A.   **Rescission**

The Receiver is substantially likely to win on his equitable rescission claims. As set forth in the Complaint, DCEH seeks equitable rescission of the Contracts to which it is a party; specifically, the Framework Agreement, The Interim Framework Agreement, The Amended & Restated Framework Agreement, The Transition Services and License Agreement, and to the extent it conveyed equity and assets of any Receivership Entities, the Equity and Asset Purchase Agreement. AEG and Argosy seek rescission of the Master Services Agreements they entered. Further, the Receivership Entities seek rescission of the Amended & Restated Framework Agreement.

In Delaware,[3] there are two conditions precedent to the granting of rescission: 1) the rescinding party must offer to restore the other party to its precontractual status; and 2) the court must be able to effectuate this restoration by decree. *See, e.g., Hegarty v. American Commonwealths Power Corp.*, 163 A. 616 (Del.Ch.1932) (citing Black on Rescission and Cancellation (2d Ed.) § 616). While the Receiver has made demands upon Defendants to return to a pre-contract status, Studio has staunchly refused to do so. This Court is able to fashion a decree to unwind the transactions and put the parties back to where they were before the Contracts were entered.

Thanks to the myriad of parties and contracts, and the fact that Studio filed UCC-1s to protect its alleged interests, equitable rescission is the proper remedy in this instance.

> Equitable rescission is appropriate when the relief needed is more than a judicial declaration that a contract is invalid and an award returning the money or property to the plaintiff to restore them to their original

---

[3] These contracts, by their terms, call for application of Delaware law.

condition. It remedies situations "when damages are not available, the amount of damages not ascertainable, or when damages are inadequate to do justice." It is the "unmaking" of an agreement and the attempt to return the parties to the *status quo*.

*Marina View Condominium Assn. of Unit Owners v. Rehoboth Marina Ventures, LLC*, Ch. No. 2017-0217-PWG, 2018 Del. Ch. LEXIS 79, at *14 (Mar. 6, 2018).

The goal of equitable rescission is to erase the contract as if they had never existed. "Thus, the remedy of equitable rescission typically requires that the court cause an instrument, document, obligation or other matter affecting plaintiff's rights and/or liabilities to be set aside and annulled, thus restoring plaintiff to his original position and reestablishing title or recovering possession of property." *E.I. Du Pont de Nemours & Co. v. HEM Research, Inc.*, Ch. Civil Action No. 10747, 1989 Del. Ch. LEXIS 132, at *8 (Oct. 13, 1989). Restoring the parties to their pre-transaction status is made somewhat easier by the simple fact that the transactions were entered in early January, 2019. Damages have not yet grown to as large a magnitude as they would have had the Contracts been allowed to run longer. Accordingly, the best result would be to unwind the Contracts and put the parties back to where they were before DCEH was forced into the transaction.

The Receiver has plead for rescission based on a several fatal flaws with the Contracts: including failure of consideration and unconscionability. He is substantially likely to win equitable rescission on either ground. First, regarding the lack of consideration, the Receiver expects to be able to prove that Studio and Foundation paid nothing for the Transferred Interest and the Business Assets, including the assets belonging to the "Excluded Campuses."[4] Furthermore, Studio has neither provided the

---

[4] The "Excluded Campuses" were defined to mean: DC Art Institute of Charleston LLC, DC Art Institute of Washington LLC, Art Institute of Tennessee – Nashville LLC, Art

7

services required under the Managed Services Agreements, nor has it paid DCEH the sums required to provide the Transition Services. Accordingly, absent any consideration (much less adequate consideration), the contracts fail.

Second, the contracts should be rescinded as they are unconscionable. Delaware courts have defined unconscionability as "Traditionally, a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and no honest or fair man would accept, on the other.'" *Marina View Condominium Assn. of Unit Owners v. Rehoboth Marina Ventures, LLC*, Ch. No. 2017-0217-PWG, 2018 Del. Ch. LEXIS 79, at *19 (Mar. 6, 2018)(citing *James v. National Financial, LLC*, 132 A.3d 799, 813 (Del. Ch. 2016), citing *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). Delaware law then recognizes two types of unconscionability: substantive and procedural. Substantive unconscionability is described:

> Substantive unconscionability looks for evidence of a "gross imbalance that 'shocks the conscience'" and whether the terms of the bargain are "so extreme as to appear unconscionable according to the mores and business practices of the time and place." Its factors focus on a cost-price disparity, denial of basic rights and remedies, penalty clauses, placement of disadvantageous clauses in inconspicuous locations or among fine print trivia, paraphrasing of disadvantageous clauses in confusing language or in a manner that obscures the problems they raise, and an overall imbalance in the obligations and rights imposed by the bargain.

*Marina View Condominium Assn. of Unit Owners v. Rehoboth Marina Ventures, LLC*, Ch. No. 2017-0217-PWG, 2018 Del. Ch. LEXIS 79, at *20 (Mar. 6, 2018).

---

Institute of Colorado LLC, DC Art Institute of Phoenix LLC, Art Institute of Portland LLC, Art Institute of Pittsburgh DC LLC, Art Institute of Fort Lauderdale LLC, Illinois Institute of Art LLC, Art Institute of Michigan LLC, Illinois Institute of Art at Schaumburg LLC, Art Institute of Las Vegas LLC, Art Institute of Indianapolis LLC, DC Art Institute of Charlotte LLC, DC Art Institute of Raleigh-Durham LLC, AiIN Restaurant LLC, AiTN Restaurant LLC, Art Institute of Seattle LLC, South University of Michigan LLC, and South University of Ohio LLC. All of these entities are included within the receivership estate and are therefore included in the definition of Receivership Entities.

The Receiver will be able to prove that just such a gross imbalance existed herein. Under the Contracts, the Excluded Campuses gave up their assets for nothing, but were bound to pay Studio for Managed Services which Studio did not provide, and did not pay DCEH to provide Transition Services on its behalf. The Argosy campuses similarly were bound to pay Studio for those same Managed Services Studio has not provided, and did not pay to have provided. But, per the terms of the Managed Service Agreements, if Argosy wanted to terminate the contracts, it would owe at least $1 million for each month remaining in for the Initial Term. Even under the most favorable interpretation of the documents, Studio could not have expected to reap one million dollars per month in profit had the contracts proceeded as designed. The Contracts were obviously unfairly tilted to the benefit of one party alone: Studio.

The Contracts are also fatally flawed for their procedural unconscionability. The term is defined:

> Procedural unconscionability focuses on the relative bargaining strength of the parties to determine if "seemingly lopsided terms might have resulted from arms'-length bargaining." Factors relating to procedural unconscionability concentrate on "inequality in bargaining or economic power, exploitation of underprivileged, unsophisticated, uneducated, and illiterate, use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry-wide standards offered on a take it or leave it basis to the party in a weaker economic position, and the circumstances surrounding the execution of the contract, including its commercial setting, its purpose, and actual effect." If the contract resulted from legitimate negotiation then, regardless of whether it was a bad bargain, the court should not intervene.

*Marina View Condominium Assn. of Unit Owners v. Rehoboth Marina Ventures, LLC*, Ch. No. 2017-0217-PWG, 2018 Del. Ch. LEXIS 79, at *20-21 (Mar. 6, 2018)(citations omitted).

The imbalance of terms was the direct and obvious result of DCEH's inability to negotiate the terms of the agreements. On information and belief, the Receiver alleges

9

that the Studio deal was presented by the Department of Education as a "Take it, or we'll cut off your funding today" prospect, with the "cut off your funding today" resulting in the immediate and irreparable harm to the students affected by immediate campus closures. It does not appear that DCEH had the ability to negotiate the substantive terms of the Contracts, and was under incredible pressure to enter them in an effort to save the schools and protect the students. There were no legitimate negotiations underlying the final documents, and the resulting documents demonstrate an unconscionable balance of interests.

### B. Breach of Contract

The Receiver will be able to prove a breach of contract claim against Defendant sufficient to warrant equitable rescission. The three university systems, including the Argosy University System within the Receivership estate, paid Defendant at least $1.3 million each in January and South and AII have made their February payment, thereby meeting their obligations under their MSAs. Argosy has not made its February payment since the Receiver believes there is no basis for Argosy to make said payment since Argosy has not received any of the Services Studio is to provide. DCEH provided the Transition Services it was required to do under the TSLA. Yet Studio has failed to pay the full amount due and owing DCEH as required under the TSLA. Studio is therefore in breach.

Breach of contract, by itself, has been found to be sufficient grounds for equitable rescission. *Marina View Condominium Assn. of Unit Owners v. Rehoboth Marina Ventures, LLC*, Ch. No. 2017-0217-PWG, 2018 Del. Ch. LEXIS 79 (Mar. 6, 2018); *Schlosser & Dennis, LLC v. Traders Alley, LLC*, C.A. No. N16C-05-190 RRC, 2017 Del. Super. LEXIS 331 (July 6, 2017), *Sheehan v. Hepburn*, 37 Del Ch. 90, 138 A.2d 810, 821

(Del Ch. 1958)("outright refusal of one party to a contract to perform the contract or its essentials constitutes such a repudiation as to entitle the other contracting party to treat the contract as rescinded.") Studio, having had no reason whatsoever to refuse to pay DCEH the sums due under the TSLA, must be deemed a repudiation entitling DCEH, AEG and Argosy to rescission of the MSA and TSLA.

## II. The Students Will Be Irreparably Injured Absent Injunctive Relief.

Although a plaintiff ordinarily must establish more than mere monetary injury to meet the irreparable harm element, the Sixth Circuit has recognized that the irreparable harm element of the preliminary injunction framework may be satisfied on a showing that, absent an injunction, financial hardship would be so severe that it would cause the moving entity to be "completely wiped out," thereby rendering "a later judgment on the merits meaningless." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978); *see also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir.1995) ("The impending loss or financial ruin of [a] business constitutes irreparable injury."). This is such a case. To put it bluntly, unless the Receiver receives an immediate influx of cash the Receivership Entities along with the AI University System and the South University System will fail. The Receiver desperately needs the money due from Studio under the TSLA in order for DCEH to be able to continue to provide the services required thereunder. If DCEH is rendered unable to pay the costs associated with the provision of those services, and therefore forced to shut down the servers and terminate the staff's employment, all three university systems AII, South, and Argosy, will fail as a result of the total lack of critical services like payroll, human resources, IT, accounting and other fundamental requirements of running any business. This type of irreparable harm that the Receiver is likely to suffer, "the loss of its business, is precisely

11

the type of harm which necessitates the granting of preliminary injunctive relief" because a later judgment in the Receiver's favor "will be a meaningless or hollow formality." *Performance Unlimited*, 52 F.3d at 1382.

While the Receivership estate maintains a claim for damages due upon Studio's breach of contract, the more important issue is what happens as the estate is deprived of the cash flow needed to complete the teach-outs and provide the Transition Services needed through the teach-out process. A campus shuttered in violation of the teach-out obligations will result in students who lose credit for the classes for which they were then enrolled. More importantly, however, those students will not have been given an opportunity to continue their studies at another institution that provides full credit for the student's already-completed coursework. The affected students will lose at least a semester, if not years of work. If Studio is allowed to spend, transfer, or otherwise hide the money it collected from the Receivership Estate, South University, and AII, no amount of damages will put the students where they would have been but for the dissipation of the funds currently being held by Studio.

### III. The Balance of Equities and the Public's Interest Strongly Favor Injunctive Relief Here.

The issue is whether Studio should be free to spend, transfer, or hide the money it collected from the Receivership Estate, AII, and South, which it owes to DCEH under the Contracts its own lawyers drafted, while the Receivership Entities and the university systems collapse. Studio has not, itself, provided any services, meaning there cannot be any conceivable expenses to offset the money it is holding. The public interest and equities involved clearly favor the Receiver. Not having incurred any expenses, Studio's sole complaint is that it loses the use of the money it did not earn. Weighing Studio's

12

complaint against the preservation of the educational track for tens of thousands of students, the balance weighs in favor of the requested relief.

**CONCLUSION**

For the foregoing reasons, the Receiver requests that this Court issue a temporary restraining order and preliminarily injunction requiring Defendants Studio Enterprise Manager, LLC and Education Principle Foundation to (1) pay the Receiver $2.1 million, which is due and owing, and (2) transfer to the Receiver any and all monies received in February 2019 from or on behalf of AII and the Ai University System, South and the South University System, Argosy and the Argosy University System and AEG.

Dated: February 21, 2019         Respectfully submitted,

/s/ Robert T. Glickman
Robert T. Glickman (0059579)
Charles A. Nemer (0009261)
Robert R. Kracht (0025574)
Hugh D. Berkson (0063997)
Nicholas R. Oleski (0095808)
McCarthy, Lebit, Crystal
 & Liffman Co., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
(216) 696-1422 – Telephone
(216) 696-1210 – Facsimile
rtg@mccarthylebit.com
can@mccarthylebit.com
rrk@mccarthylebit.com
hdb@mccarthylebit.com
nro@mccarthylebit.com

*Special Counsel for the Receiver*